IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WELLS FARGO FUNDING and WELLS FARGO BANK, N.A., ) ) | |
| ) | |
| Plaintiff , ) | |
| ) | |
| v.                              ) | No. 08 C 1806 |
| ) | |
| ) | Judge Bucklo |
| ) | presiding |
| DRAPER & KRAMER MORTGAGE CORP., ) | |
| DRAPER AND KRAMER, ) | |
| INCORPORATED and DKH, INC., ) | |
| ) | |
| Defendants.                    ) | |

## ANSWER AND AFFIRMATIVE DEFENSES

Defendants Draper and Kramer Mortgage Corp., Draper and Kramer, Incorporated and

DKH, Inc., by their attorney, John J. Lydon, in answer to the Plaintiffs' Complaint, state as

follows:

(THE PARTIES)

1.      Plaintiff Wells Fargo Funding is a corporation organized and existing under the

laws of the State of Minnesota and maintains its principal place of business in Minnesota Wells

Fargo Funding has offices in Illinois and regularly engages in the purchase of mortgage loans in

Illinois.

ANSWER:     Defendants admit the allegations in paragraph 1.

2.      Plaintiff Wells Fargo Bank, N.A. is a national association chartered in Sioux

Falls, South Dakota, with its principal place of business in San Francisco, California.

ANSWER:    Defendants admit the allegations in paragraph 2.

3.    Defendant DKMC is a Delaware corporation with its principal place of business in Chicago, Illinois.

ANSWER:    Defendants admit the allegations in paragraph 3.

4.    Defendant DK, Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois.

ANSWER:    Defendants admit the allegations in paragraph 4.

5.    Defendant DKH is a Delaware corporation with its principal place of business in Chicago, Illinois.

ANSWER:    Defendants admit the allegations in paragraph 5.

(JURISDICTION AND VENUE)

6.    This court has jurisdiction over the subject matter of this action pursuant to Title 28 of the United States Code § 1332(a)(1) and (c)(1), because the matter in controversy exceeds $75,000 exclusive of costs and interest and is between citizens of different states. Venue is proper in this District pursuant to Title 28 of the United States Code § 1391(a)(1) and (2) and (c) because a substantial portion of the events giving rise to the Plaintiff's claims occurred in this District.

ANSWER:    Defendants admit the allegations in paragraph 6.

(FACTUAL BACKGROUND)

(A.    Home Loan Purchase Agreement and Guaranty Agreement)

7.    On or about May 23, 2007, DKMC and Wells Fargo entered into a Loan Purchase Agreement (the "Loan Agreement"), in which Wells Fargo agreed to purchase and DKMC agreed

2

to sell certain residential mortgage loans.  (A copy of the Agreement is attached hereto as Exhibit A).

ANSWER:    Defendants admit the allegations in paragraph 7.

8.    Paragraph 1 of the Loan Agreement incorporates the Wells Fargo Funding Seller Guide ("Seller Guide"), which together form the complete agreement between the parties. (A copy of the relevant representations and warranties of the Seller Guide is attached hereto as Exhibit B).

ANSWER:    Defendants admit the allegations in paragraph 8.

9.    Pursuant to the Loan Agreement, DKMC had the option to sell to Wells Fargo loans meeting the qualifications listed in § 300.02 of the Seller Guide.  As set forth under the Seller Guide, DKMC agreed to provide accurate and complete loan documentation and made various representations, warranties and covenants with respect to loans sold to Wells Fargo.

ANSWER:    Defendants deny the allegations in paragraph 9.

10.    In the event DKMC failed to fulfill its obligation to deliver qualifying loans with sufficient documentation or breached any representations, warranties and/or covenants made regarding any of the loans, the Loan Agreement and Seller Guide provide, inter alia, that Wells Fargo is entitled to the demand repurchase of the loans by DKMC, plus accrued interest, legal expenses, and other expenses that Wells Fargo may incur as a result of DKMC's default.  DKMC also agreed to reimburse Wells Fargo for the price paid by Wells Fargo for the servicing rights with respect to each of the loans, and is required to indemnify Wells Fargo for all costs and losses associated with such loans.

ANSWER:    Defendants admit the allegations in paragraph 10.

3

11.    On or about June 1, 2007, DK, Inc. and Wells Fargo entered into a Guaranty and Support Agreement (the "Guaranty"), in which DK, Inc. agreed to guarantee, *inter alia,* certain obligations, including payment and performance obligations, owed by DKMC to Wells Fargo pursuant to the Loan Agreement.  (A copy of the Guaranty is attached hereto as Exhibit C).

ANSWER:    Defendants admit the allegations in paragraph 11.

12.    Under Paragraph 2 of the Guaranty, DK, Inc. agrees to guarantee both the payment of amounts due to Wells Fargo from DKMC under the Loan Agreement and/or related documents and the performance of all obligations owed to Wells Fargo by DKMC under the Loan Agreement and/or related documents.  The Guaranty specifically provides that it is a guaranty of payment and performance.

ANSWER:    Defendants deny the allegations in paragraph 12.

13.    Under Paragraph 7 of the Guaranty, DK, Inc. made certain warranties and representations to Wells Fargo.  Specifically, DK, Inc. warranted and represented to Wells Fargo that every warranty, representation and obligation made or undertaken by DKMC in the Loan Agreement, Seller Guide and/or underlying loan documents related to the sale of any loan is true and correct.

ANSWER:    Defendants admit the allegations in paragraph 13.

14.    Paragraph 9 of the Guaranty provides that DK, Inc.'s obligations under the Guaranty are joint and several, absolute and unconditional and independent of any obligations of DKMC.

ANSWER:    Defendants admitthe allegations in paragraph 14.

4

15.     Under Paragraph 12 of the Guaranty, DK, Inc. agrees to indemnify Wells Fargo for all costs and expenses, including attorneys' fees, incurred or paid by Wells Fargo in enforcing the Guaranty.

ANSWER:     Defendants admit the allegations in paragraph 15.

(B.  Home Equity Loan/Line of Credit Purchase Agreement and Home Equity Guaranty Agreement)

16.     On or about October 31, 2003, DKMC and Wells Fargo Bank entered into a Home Equity Loan/Home Equity Line Purchase Agreement (the "Home Equity Agreement"), in which Wells Fargo Bank agreed to purchase and DKMC agreed to sell certain home equity loans and/or home equity lines of credit.  (A copy of the Home Equity Agreement is attached hereto as Exhibit D).

ANSWER:     Defendants admit the allegations in paragraph 16.

17.     Paragraph 1 of the Home Equity Agreement incorporates the Wells Fargo Bank Home Equity Seller Guide (the "Home Equity Seller Guide"), which together form the complete agreement between the parties.  (A copy of the relevant representations and warranties of the Home Equity Seller Guide is attached hereto as Exhibit E).

ANSWER:     Defendants admit the allegations in paragraph 17.

18.     Pursuant to the Agreement, DKMC had the option to sell to Wells Fargo Bank loans meeting the qualifications listed in § 300.02 of the Home Equity Seller Guide.  As set forth under the Home Equity Seller Guide, DKMC agreed to provide accurate and complete loan documentation and made various representations, warranties and covenants with respect to loans sold to Wells Fargo Bank.

ANSWER:    Defendants admit the allegations in paragraph 18.

19.    In the event DKMC failed to fulfill its obligation to deliver qualifying loans with sufficient documentation or breached any representations, warranties and/or covenants made regarding any of the loans, the Home Equity Agreement and Home Equity Seller Guide provide, *inter alia*, that Wells Fargo Bank is entitled to the demand repurchase of the loans by DKMC, plus accrued interest, legal expenses, and other expenses that Wells Fargo Bank may incur as a result of DKMC's default.  DKMC also agreed to reimburse Wells Fargo Bank for the price paid by Wells Fargo Bank for the servicing rights with respect to each of the loans, and is required to indemnify Wells Fargo Bank for all costs and losses associated with such loans.

ANSWER:    Defendants admit the allegations in paragraph 19.

20.    On or about January 29, 2007, DKH and Wells Fargo Bank entered into a Guaranty and Support Agreement (the "Home Equity Guaranty"), in which DKH agreed to guarantee, *inter alia,* certain obligations, including payment and performance obligations, owed by DKMC to Wells Fargo Bank pursuant to the Home Equity Agreement.  (A copy of the Guaranty is attached hereto as Exhibit F).

ANSWER:    Defendants admit the allegations in paragraph 20.

21.    Under Paragraph 2 of the Home Equity Guaranty, DKH agrees to guarantee both the payment of amounts due to Wells Fargo Bank from DKMC under the Home Equity Agreement and/or related documents and the performance of all obligations owed to Wells Fargo Bank by DKMC under the Home Equity Agreement and/or related documents.  The Home Equity Guaranty specifically provides that it is a guaranty of payment and performance.

ANSWER:    Defendants admit the allegations in paragraph 21.

22.     Under Paragraph 7 of the Home Equity Guaranty, DKH made certain warranties and representations to Wells Fargo Bank. Specifically, DKH warranted and represented to Wells Fargo Bank that every warranty, representation and obligation made or undertaken by DKMC in the Home Equity Agreement, Home Equity Seller Guide and/or underlying loan documents related to the sale of any loan is true and correct.

ANSWER:     Defendants admit the allegations in paragraph 22.

23.     Paragraph 9 of the Home Equity Guaranty provides that DKH's obligations under the Home Equity Guaranty are joint and several, absolute and unconditional and independent of any obligations of DKMC.

ANSWER:     Defendants admit the allegations in paragraph 23.

24.     Under Paragraph 12 of the Home Equity Guaranty, DKH agrees to indemnify Wells Fargo Bank for all costs and expenses, including attorneys' fees, incurred or paid by Wells Fargo Bank in enforcing the Home Equity Guaranty.

ANSWER:     Defendants admit the allegations in paragraph 24.

## COUNT I–SPECIFIC PERFORMANCE–DKMC
### (Bolger Loan - Repurchase)

25.     Wells Fargo realleges and incorporates Paragraphs 1 through 24 as though fully set forth herein.

ANSWER:     Defendants incorporates it answer to paragraphs 1 through 24
            above for its answer to the allegations in paragraph 25.

26.     Wells Fargo purchased the Bolger loan from DKMC (loan number 193955179) on or about June 1, 2004.

7

ANSWER:    Defendants admit the allegations in paragraph 26.

27.    DKMC made material misrepresentations with regard to the sale of the Bolger loan.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

28.    The 80% LTV ratio of the Bolger loan exceeded the maximum allowable 75% LTV ratio for the type of property underlying the Bolger loan.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28.

29.    DKMC failed to provide a qualifying loan and/or sufficient loan documentation as required by the Loan Agreement and Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29.

30.    The foregoing constitutes a breach of the warranties, representations and covenants made by DKMC to Wells Fargo under § 300.02 of the Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30.

31.    As a result of DKMC's foregoing breaches, the Loan Agreement and Seller Guide entitle Wells Fargo to require DKMC to repurchase the loan at the Purchase Price.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

32.    On or about December 21, 2007, Wells Fargo informed DKMC and DK, Inc. of the misrepresentations involving the Bolger loan and demanded that DKMC and DK, Inc. repurchase said loan.  (A copy of correspondence from Wells Fargo to DKMC and DK, Inc. is

attached hereto as Exhibit G).

> ANSWER:   Defendants lack knowledge or information sufficient to form a
> belief as to the truth of the allegations in paragraph 32.

33.   The Purchase Price of the Bolger loan is, as of January 1, 2008, $291,192.11.

This amount continues to accrue interest and/or other fees and penalties.

> ANSWER:   Defendants lack knowledge or information sufficient to form a
> belief as to the truth of the allegations in paragraph 33.

34.   To date, DKMC has refused to repurchase the Bolger loan.

> ANSWER:   Defendants admit the allegations in paragraph 34.

35.   DKMC's failure to repurchase the Bolger loan from Wells Fargo also constitutes a

material breach of its contractual obligations to Wells Fargo under §305 of the Seller Guide and

Loan Agreement.

> ANSWER:   Defendants deny the allegations in paragraph 35.

## COUNT II–SPECIFIC PERFORMANCE  GUARANTY–DK, Inc.
### (Bolger Loan - Guaranty)

36.   Wells Fargo realleges and incorporates Paragraphs 1 through 35 as though fully

set forth herein.

> ANSWER:   Defendants incorporate by reference their answers to paragraphs 1
> to 35 above as their answer to paragraph 36.

37.   Under the terms of the Guaranty, DK, Inc. agreed to guarantee the performance

and payment obligations owed by DKMC to Wells Fargo pursuant to the Loan Agreement.

> ANSWER:   Defendants admit the allegations in paragraph 37.

9

38.    DKMC has breached representations, warranties and covenants made with respect to the Bolger loan.  Pursuant to the Loan Agreement and Seller Guide, DKMC is therefore required to repurchase the Bolger loan from Wells Fargo at a Purchase Price of at least $291,192.11.  Wells Fargo has demanded that DKMC repurchase the Bolger loan, which DKMC has failed to do.

> ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38.

39.    Pursuant to the Guaranty, DK, Inc. is required to perform all obligations owed to Wells Fargo by DKMC for the Bolger loan.  DK, Inc. is therefore required to repurchase the Bolger loan from Wells Fargo.

> ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39.

40.    Wells Fargo has demanded that DK, Inc. repurchase the Bolger loan, and DK, Inc. has refused to do so.

> ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40.

## COUNT III–SPECIFIC PERFORMANCE–DKMC
### (Juneau Loan - Repurchase)

41.    Wells Fargo realleges and incorporates Paragraphs 1 through 24 as though fully set forth herein.

> ANSWER:    Defendants incorporate by reference their answers to paragraphs 1 to 24 above as their answer to paragraph 41.

42.    Wells Fargo purchased the Juneau loan from DKMC (loan number 139610752) on or about October 14, 2004.

ANSWER:    Defendants admit the allegations in paragraph 42.

43.    DKMC made material misrepresentations with regard to the sale of the Juneau

loan.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 43.

44.    The Juneau loan was delivered to Wells Fargo as an 80% no cash out refinance.

However, the loan did not meet the requirements of a refinance transaction.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 44.

45.    DKMC failed to provide a qualifying loan and/or sufficient loan documentation as

required by the Loan Agreement and Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 45.

46.    The foregoing constitutes a breach of the warranties, representations and

covenants made by DKMC to Wells Fargo under § 300.02 of the Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 46.

47.    As a result of DKMC's foregoing breaches, the Loan Agreement and Seller Guide

entitle Wells Fargo to require DKMC to repurchase the loan at the Purchase Price.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 47.

48.    On or about December 21, 2007, Wells Fargo informed DKMC and DK, Inc. of

the misrepresentations involving the Juneau loan and demanded that DKMC and DK, Inc.

repurchase said loan.  (A copy of correspondence from Wells Fargo to DKMC and DK, Inc. is

attached hereto as Exhibit G).

      ANSWER:    Defendants admit receipt of the letter but lack knowledge or information sufficient to form a belief as to the truth of the remaining the allegations in paragraph 48.

49.     The Purchase Price of the Juneau loan is, as of November 1, 2007, $135,978.51.

This amount continues to accrue interest and/or other fees and penalties.

      ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49.

50.     To date, DKMC has refused to repurchase the Juneau loan.

      ANSWER:    Defendants admit the allegations in paragraph 50.

51.     DKMC's failure to repurchase the Juneau loan from Wells Fargo also constitutes a

material breach of its contractual obligations to Wells Fargo under §305 of the Seller Guide and

Loan Agreement.

      ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51.

## COUNT IV–SPECIFIC PERFORMANCE–GUARANTY–DK, Inc.
### (Juneau Loan - Guaranty)

52.     Wells Fargo realleges and incorporates Paragraphs 1 through 24, and 41 through

51 as though fully set forth herein.

      ANSWER:    Defendants incorporate by reference their answers to paragraphs 1 to 34, and 41 through 51 above as their answer to paragraph 52.

53.     Under the terms of the Guaranty, DK, Inc. agreed to guarantee the performance

and payment obligations owed by DKMC to Wells Fargo pursuant to the Loan Agreement.

      ANSWER:    Defendants admit the allegations in paragraph 53.

12

54.      DKMC has breached representations, warranties and covenants made with respect to the Juneau loan. Pursuant to the Loan Agreement and Seller Guide, DKMC is therefore required to repurchase the Juneau loan from Wells Fargo at a Purchase Price of at least $135,978.51.  Wells Fargo has demanded that DKMC repurchase the Juneau loan, which DKMC has failed to do.

ANSWER:      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54.

55.      Pursuant to the Guaranty, DK, Inc. is required to perform all obligations owed to Wells Fargo by DKMC for the Juneau loan. DK, Inc. is therefore required to repurchase the Juneau loan from Wells Fargo.

ANSWER:      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55.

56.      Wells Fargo has demanded that DK, Inc. repurchase the Juneau loan, and DK, Inc. has refused to do so.

ANSWER:      Defendants admit the allegations in paragraph 56.

**COUNT V–SPECIFIC PERFORMANCE–DKMC**
**(Butler Loan - Repurchase)**

57.      Wells Fargo realleges and incorporates Paragraphs 1 through 24 as though fully set forth herein.

ANSWER:      Defendants incorporate by reference their answers to paragraphs 1 to 24 above as their answer to paragraph 57.

58.      Wells Fargo purchased the Butler loan from DKMC (loan number 199551714).

ANSWER:      Defendants admit the averment is paragraph 58.

13

59.     DKMC made material misrepresentations with regard to the sale of the Butler loan. The loan file is missing both a completed HUD form and evidence of a transfer of gift funds in the amount of $5,000.

ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59.

60.     DKMC failed to provide a qualifying loan and/or sufficient loan documentation as required by the Loan Agreement and Seller Guide.

ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60.

61.     The foregoing constitutes a breach of the warranties, representations and covenants made by DKMC to Wells Fargo under § 300.02 of the Seller Guide.

ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61.

62.     As a result of DKMC's foregoing breaches, the Loan Agreement and Seller Guide entitle Wells Fargo to require DKMC to repurchase the loan at the Purchase Price.

ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62.

63.     On or about December 21,2007, Wells Fargo informed DKMC and DK, Inc. of the misrepresentations involving the Butler loan and demanded that DKMC and DK, Inc. repurchase said loan.  (A copy of correspondence from Wells Fargo to DKMC and DK, Inc. is attached hereto as Exhibit G).

ANSWER:     Defendants admit receipt of the letter but deny the remaining allegations in paragraph 63.

14

64.    The Purchase Price of the Butler loan continues to accrue interest and/or other fees and penalties.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64.

65.    To date, DKMC has refused to repurchase the Butler loan.

ANSWER:    Defendants admit the allegations in paragraph 65.

66.    DKMC's failure to repurchase the Butler loan from Wells Fargo also constitutes a material breach of its contractual obligations to Wells Fargo under §305 of the Seller Guide and Loan Agreement.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66.

## COUNT VI–SPECIFIC PERFORMANCE–GUARANTY–DK, Inc.
### (Butler Loan - Guaranty)

67.    Wells Fargo realleges and incorporates Paragraphs 1 through 24 and 57 through 66 as though fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1 to 24 and 57 through 66 above as their answer to paragraph 67.

68.    Under the terms of the Guaranty, DK, Inc. agreed to guarantee the performance and payment obligations owed by DKMC to Wells Fargo pursuant to the Loan Agreement.

ANSWER:    Defendants admit the allegations in paragraph 68.

69.    DKMC has breached representations, warranties and covenants made with respect to the Butler loan. Pursuant to the Loan Agreement and Seller Guide, DKMC is therefore required to repurchase the Butler loan from Wells Fargo.  Wells Fargo has demanded that

DKMC repurchase the Butler loan, which DKMC has failed to do.

> ANSWER:    Defendants lack knowledge or information sufficient to form a
> belief as to the truth of the allegations in paragraph 69.

70.    Pursuant to the Guaranty, DK, Inc. is required to perform all obligations owed to

Wells Fargo by DKMC for the Butler loan. DK, Inc. is therefore required to repurchase the

Butler loan from Wells Fargo.

> ANSWER:    Defendants lack knowledge or information sufficient to form a
> belief as to the truth of the allegations in paragraph 70.

71.    Wells Fargo has demanded that DK, Inc. repurchase the Butler loan, and DK, Inc.

has refused to do so.

> ANSWER:    Defendants admit the allegations in paragraph 71.

## COUNT VII–SPECIFIC PERFORMANCE–DKMC
### (Antink Loan - Repurchase)

72.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 as though

fully set forth herein.

> ANSWER:    Defendants incorporate by reference their answers to paragraphs 1
> to 24 above as their answer to paragraph 72.

73.    Wells Fargo Bank purchased the Antink loan from DKMC (loan number

6540640839) on or about December 2, 2004.

> ANSWER:    Defendants admit the allegations in paragraph 73.

74.    DKMC made material misrepresentations with regard to the sale of the Antink

loan.

> ANSWER:    Defendants lack knowledge or information sufficient to form a
> belief as to the truth of the allegations in paragraph 74.

16

75.    DKMC failed to provide a qualifying loan and/or sufficient loan documentation as required by the Home Equity Agreement and Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75.

76.    The foregoing constitutes a breach of the warranties, representations and covenants made by DKMC to Wells Fargo Bank under § 300.02 of the Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76.

77.    As a result of DKMC's foregoing breaches, the Home Equity Agreement and Home Equity Seller Guide entitle Wells Fargo Bank to require DKMC to repurchase the loan at the Purchase Price.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77.

78.    On or about December 21, 2007, Wells Fargo Bank informed DKMC and DKH of the misrepresentations involving the Antink loan and demanded that DKMC and DKH repurchase said loan.  (A copy of correspondence from Wells Fargo Bank to DKMC and DKH is attached hereto as Exhibit G).

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78.

79.    The Purchase Price of the Antink loan is, as of January 1, 2008, $219,233.34. This amount continues to accrue interest and/or other fees and penalties.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79.

17

80.    To date, DKMC has refused to repurchase the Antink loan.

ANSWER:    Defendants admit the allegations in paragraph 80.

81.    DKMC's failure to repurchase the Antink loan from Wells Fargo Bank also constitutes a material breach of its contractual obligations to Wells Fargo Bank under {}305 of the Home Equity Seller Guide and Home Equity Agreement.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81.

## COUNT VIII–SPECIFIC PERFORMANCE–GUARANTY–DKH
### (Antink Loan - Guaranty)

82.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 and 72 through 81 as though fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1 to 24 and 72 through 82 above as their answer to paragraph 82.

83.    Under the terms of the Home Equity Guaranty, DKH agreed to guarantee the performance and payment obligations owed by DKMC to Wells Fargo Bank pursuant to the Home Equity Agreement.

ANSWER:    Defendants admit the allegations in paragraph 83.

84.    DKMC has breached representations, warranties and covenants made with respect to the Antink loan.  Pursuant to the Home Equity Agreement and the Home Equity Seller Guide, DKMC is therefore required to repurchase the Antink loan from Wells Fargo Bank at a Purchase Price of at least $219,233.34.  Wells Fargo Bank has demanded that DKMC repurchase the Antink loan, which DKMC has failed to do.

ANSWER:    Defendants lack knowledge or information sufficient to form a

18

belief as to the truth of the allegations in paragraph 27.

85.    Pursuant to the Home Equity Guaranty, DKH is required to perform all

obligations owed to Wells Fargo Bank by DKMC for the Antink loan.  DKH is therefore required

to repurchase the Antink loan from Wells Fargo Bank.

> ANSWER:    Defendants lack knowledge or information sufficient to form a
> belief as to the truth of the allegations in paragraph 85.

86.    Wells Fargo Bank has demanded that DKH repurchase the Antink loan, and DKH

has refused to do so.

> ANSWER:    Defendants admit the averment is paragraph 86.

## COUNT IX–SPECIFIC PERFORMANCE–DKMC
### (Chapman Loan - Repurchase)

87.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 as though

fully set forth herein.

> ANSWER:    Defendants incorporate by reference their answers to paragraphs 1
> to 24 above as their answer to paragraph 87.

88.    Wells Fargo Bank purchased the Chapman loan from DKMC (loan number

6540840728) on or about January 20, 2005.

> ANSWER:    Defendants admit the allegations in paragraph 88.

89.    DKMC made material misrepresentations with regard to the sale of the Chapman

loan.

> ANSWER:    Defendants lack knowledge or information sufficient to form a
> belief as to the truth of the allegations in paragraph 89.

90.     DKMC failed to provide a qualifying loan and/or sufficient loan documentation as required by the Home Equity Agreement and Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90.

91.     The foregoing constitutes a breach of the warranties, representations and covenants made by DKMC to Wells Fargo Bank under § 300.02 of the Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91.

92.     As a result of DKMC's foregoing breaches, the Home Equity Agreement and Home Equity Seller Guide entitle Wells Fargo Bank to require DKMC to repurchase the loan at the Purchase Price.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92.

93.     On or about December 21, 2007, Wells Fargo Bank informed DKMC and DKH of the misrepresentations involving the Chapman loan and demanded that DKMC and DKH repurchase said loan.  (A copy of correspondence from Wells Fargo Bank to DKMC and DKH is attached hereto as Exhibit G).

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93.

94.     The Purchase Price of the Chapman loan is, as of January 1, 2008, $28,231.95. This amount continues to accrue interest and/or other fees and penalties.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

20

95.     To date, DKMC has refused to repurchase the Chapman loan.

ANSWER:     Defendants admit the allegations in paragraph 95.

96.     DKMC's failure to repurchase the Chapman loan from Wells Fargo Bank also constitutes a material breach of its contractual obligations to Wells Fargo Bank under §305 of the Home Equity Seller Guide and Home Equity Agreement.

ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96.

## COUNT X–SPECIFIC PERFORMANCE–GUARANTY–DKH
### (Chapman Loan - Guaranty)

97.     Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 and 87 through 96 as though fully set forth herein.

ANSWER:     Defendants incorporate by reference their answers to paragraphs 1 to 24 and 87 through 96 above as their answer to paragraph 97.

98.     Under the terms of the Home Equity Guaranty, DKH agreed to guarantee the performance and payment obligations owed by DKMC to Wells Fargo Bank pursuant to the Home Equity Agreement.

ANSWER:     Defendants admit the averment is paragraph 98.

99.     DKMC has breached representations, warranties and covenants made with respect to the Chapman loan.  Pursuant to the Home Equity Agreement and the Home Equity Seller Guide, DKMC is therefore required to repurchase the Chapman loan from Wells Fargo Bank at a Purchase Price of at least $28,231.95.  Wells Fargo Bank has demanded that DKMC repurchase the Chapman loan, which DKMC has failed to do.

ANSWER:     Defendants lack knowledge or information sufficient to form a

belief as to the truth of the allegations in paragraph 99.

100.    Pursuant to the Home Equity Guaranty, DKH is required to perform all obligations owed to Wells Fargo Bank by DKMC for the Chapman loan.  DKH is therefore required to repurchase the Chapman loan from Wells Fargo Bank.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100.

101.    Wells Fargo Bank has demanded that DKH repurchase the Chapman loan, and DKH has refused to do so.

ANSWER:    Defendants admit the allegations in paragraph 101.

## COUNT XI–SPECIFIC PERFORMANCE–DKMC
### (Betacour Loan - Repurchase)

102.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 as though fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1 to 24 above as their answer to paragraph 102.

103.    Wells Fargo Bank purchased the Betacour loan from DKMC (loan number 6541655349) on or about September 13, 2005.

ANSWER:    Defendants admit the allegations in paragraph 103.

104.    DKMC made material misrepresentations with regard to the sale of the Betacour loan.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 104.

105.    DKMC failed to provide a qualifying loan and/or sufficient loan documentation as required by the Home Equity Agreement and Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105.

106.    The foregoing constitutes a breach of the warranties, representations and covenants made by DKMC to Wells Fargo Bank under § 300.02 of the Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 106.

107.    As a result of DKMC's foregoing breaches, the Home Equity Agreement and Home Equity Seller Guide entitle Wells Fargo Bank to require DKMC to repurchase the loan at the Purchase Price.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107.

108.    On or about December 21, 2007, Wells Fargo Bank informed DKMC and DKH of the misrepresentations involving the Betacour loan and demanded that DKMC and DKH repurchase said loan.  (A copy of correspondence from Wells Fargo Bank to DKMC and DKH is attached hereto as Exhibit G).

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108.

109.    The Purchase Price of the Betacour loan is, as of January 1, 2008, $62,189.95. This amount continues to accrue interest and/or other fees and penalties.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109.

23

110.    To date, DKMC has refused to repurchase the Betacour loan.

ANSWER:    Defendants admit the allegations in paragraph 110.

111.    DKMC's failure to repurchase the Betacour loan from Wells Fargo Bank also constitutes a material breach of its contractual obligations to Wells Fargo Bank under §305 of the Home Equity Seller Guide and Home Equity Agreement.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 111.

### COUNT XII–SPECIFIC PERFORMANCE–GUARANTY–DKH
### (Betacour Loan - Guaranty)

112.    Wells Fargo realleges and incorporates Paragraphs 1 through 24 and 102 through 111 as though fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1 to 24 and 102 through 111 above as their answer to paragraph 112.

113.    Under the terms of the Home Equity Guaranty, DKH agreed to guarantee the performance and payment obligations owed by DKMC to Wells Fargo Bank pursuant to the Home Equity Agreement.

ANSWER:    Defendants admit the allegations in paragraph 113.

114.    DKMC has breached representations, warranties and covenants made with respect to the Betacour loan.  Pursuant to the Home Equity Agreement and the Home Equity Seller Guide, DKMC is therefore required to repurchase the Betacour loan from Wells Fargo Bank at a Purchase Price of at least $62,189.95. Wells Fargo Bank has demanded that DKMC repurchase the Betacour loan, which DKMC has failed to do.

24

> ANSWER:    Defendants lack knowledge or information sufficient to form a
> belief as to the truth of the allegations in paragraph 114.

115.    Pursuant to the Home Equity Guaranty, DKH is required to perform all

obligations owed to Wells Fargo Bank by DKMC for the Betacour loan.  DKH is therefore

required to repurchase the Betacour loan from Wells Fargo Bank.

> ANSWER:    Defendants lack knowledge or information sufficient to form a
> belief as to the truth of the allegations in paragraph 27.

116.    Wells Fargo Bank has demanded that DKH repurchase the Betacour loan, and

DKH has refused to do so.

> ANSWER:    Defendants lack knowledge or information sufficient to form a
> belief as to the truth of the allegations in paragraph 116.

## COUNT XIII–SPECIFIC PERFORMANCE–DKMC
### (Parker Loan - Repurchase)

117.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 as though

fully set forth herein.

> ANSWER:    Defendants incorporate by reference their answers to paragraphs 1
> to 24 above as their answer to paragraph 117.

118.    Wells Fargo Bank purchased the Parker loan from DKMC (loan number

6542177095) on or about January 24, 2006.

> ANSWER:    Defendants admit the allegations in paragraph 118.

119.    DKMC made material misrepresentations with regard to the sale of the Parker

loan.

> ANSWER:    Defendants lack knowledge or information sufficient to form a
> belief as to the truth of the allegations in paragraph 119.

120.    DKMC failed to provide a qualifying loan and/or sufficient loan documentation as required by the Home Equity Agreement and Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 120.

121.    The foregoing constitutes a breach of the warranties, representations and covenants made by DKMC to Wells Fargo Bank under § 300.02 of the Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 121.

122.    As a result of DKMC's foregoing breaches, the Home Equity Agreement and Home Equity Seller Guide entitle Wells Fargo Bank to require DKMC to repurchase the loan at the Purchase Price.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122.

123.    On or about December 21, 2007, Wells Fargo Bank informed DKMC and DKH of the misrepresentations involving the Parker loan and demanded that DKMC and DKH repurchase said loan.  (A copy of correspondence from Wells Fargo Bank to DKMC and DKH is attached hereto as Exhibit G).

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123.

124.    The Purchase Price of the Parker loan is, as of January 1, 2008, $92,969.40.  This amount continues to accrue interest and/or other fees and penalties.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124.

125.    To date, DKMC has refused to repurchase the Parker loan.

ANSWER:     Defendants admit the allegations in paragraph 125.

126.    DKMC's failure to repurchase the Parker loan from Wells Fargo Bank also constitutes a material breach of its contractual obligations to Wells Fargo Bank under ⁅⁆305 of the Home Equity Seller Guide and Home Equity Agreement.

ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 126.

## COUNT XIV–SPECIFIC PERFORMANCE–GUARANTY–DKH
### (Parker Loan - Guaranty)

127.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 and 117 through 126 as though fully set forth herein.

ANSWER:     Defendants incorporate by reference their answers to paragraphs 1 to 24 and 117 through 126 above as their answer to paragraph 127.

128.    Under the terms of the Home Equity Guaranty, DKH agreed to guarantee the performance and payment obligations owed by DKMC to Wells Fargo Bank pursuant to the Home Equity Agreement.

ANSWER:     Defendants admit the allegations in paragraph 128.

129.    DKMC has breached representations, warranties and covenants made with respect to the Parker loan.  Pursuant to the Home Equity Agreement and the Home Equity Seller Guide, DKMC is therefore required to repurchase the Parker loan from Wells Fargo Bank at a Purchase Price of at least $92,969.40.  Wells Fargo Bank has demanded that DKMC repurchase the Parker loan, which DKMC has failed to do.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 129.

130.    Pursuant to the Home Equity Guaranty, DKH is required to perform all

obligations owed to Wells Fargo Bank by DKMC for the Parker loan.  DKH is therefore required

to repurchase the Parker loan from Wells Fargo Bank.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 130.

131.    Wells Fargo Bank has demanded that DKH repurchase the Parker loan, and DKH

has refused to do so.

ANSWER:    Defendants admit the allegations in paragraph 131.

## COUNT XV–SPECIFIC PERFORMANCE–DKMC
### (Myrlie Loan - Repurchase)

132.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 as though

fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1
to 24 above as their answer to paragraph 132.

133.    Wells Fargo Bank purchased the Myrlie loan from DKMC (loan number

6541762657) on or about October 27, 2005.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 133.

134.    DKMC made material misrepresentations with regard to the sale of the Myrlie

loan.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 134.

135.    DKMC also failed to provide a qualifying loan and/or sufficient loan documentation as required by the Home Equity Agreement and Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 135.

136.    The foregoing constitutes a breach of the warranties, representations and covenants made by DKMC to Wells Fargo Bank under § 300.02 of the Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 136.

137.    As a result of DKMC's foregoing breaches, the Home Equity Agreement and Home Equity Seller Guide entitle Wells Fargo Bank to require DKMC to repurchase the loan at the Purchase Price.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 137.

138.    On or about December 21, 2007, Wells Fargo Bank informed DKMC and DKH of the misrepresentations involving the Mydie loan and demanded that DKMC and DKH repurchase said loan.  (A copy of correspondence from Wells Fargo Bank to DKMC and DKH is attached hereto as Exhibit G).

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 138.

139.    The Purchase Price of the Mydie loan is, as of January 1, 2008, $109,134.35.  This amount continues to accrue interest and/or other fees and penalties.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 139.

140.    To date, DKMC has refused to repurchase the Myrlie loan.

ANSWER:    Defendants admit the allegations in paragraph 140.

141.    DKMC's failure to repurchase the Myrlie loan from Wells Fargo Bank also constitutes a material breach of its contractual obligations to Wells Fargo Bank under {}305 of the Home Equity Seller Guide and Home Equity Agreement.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 141.

## COUNT XVI–SPECIFIC PERFORMANCE–GUARANTY–DKH
### (Myrlie Loan - Guaranty)

142.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 and 132 through 141 as though fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1 to 24 and 132 through 141 above as their answer to paragraph 142.

143.    Under the terms of the Home Equity Guaranty, DKH agreed to guarantee the performance and payment obligations owed by DKMC to Wells Fargo Bank pursuant to the Home Equity Agreement.

ANSWER:    Defendants admit the allegations in paragraph 143.

144.    DKMC has breached representations, warranties and covenants made with respect to the Myrlie loan.  Pursuant to the Home Equity Agreement and the Home Equity Seller Guide, DKMC is therefore required to repurchase the Myrlie loan from Wells Fargo Bank at a Purchase Price of at least $109,134.35.  Wells Fargo Bank has demanded that DKMC repurchase the Myrlie loan, which DKMC has failed to do.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 144.

145.    Pursuant to the Home Equity Guaranty, DKH is required to perform all

obligations owed to Wells Fargo Bank by DKMC for the Myrlie loan.  DKH is therefore required

to repurchase the Myrlie loan from Wells Fargo Bank.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 27.

146.    Wells Fargo Bank has demanded that DKH repurchase the Myrlie loan, and DKH

has refused to do so.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 146.

## COUNT XVII -SPECIFIC PERFORMANCE -- DKMC
### (Wright Loan - Repurchase)

147.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 as though

fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1
to 24 above as their answer to paragraph 147.

148.    Wells Fargo Bank purchased the Wright loan from DKMC (loan number

6540607234).

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 147.

149.    DKMC made material misrepresentations with regard to the sale of the Wdght

loan.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 149.

31

150.    The loan was approved as a cash out refinance of primary property.  After factoring in the borrower's net rental income loss and mortgage payments for properties whose rental income was not verified, the DSR was 90.41%, in violation of the requirements of the Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

151.    DKMC failed to provide a qualifying loan and/or sufficient loan documentation as required by the Home Equity Agreement and Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

152.    The foregoing constitutes a breach of the warranties, representations and covenants made by DKMC to Wells Fargo Bank under § 300.02 of the Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

153.    As a result of DKMC's foregoing breaches, the Home Equity Agreement and Home Equity Seller Guide entitle Wells Fargo Bank to require DKMC to repurchase the loan at the Purchase Price.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

154.    On or about December 21, 2007, Wells Fargo Bank informed DKMC and DKH of the misrepresentations involving the Wright loan and demanded that DKMC and DKH repurchase said loan. (A copy of correspondence from Wells Fargo Bank to DKMC and DKH is attached hereto as Exhibit G).

32

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 27.

155.    The Purchase Price of the Wright loan is, as of January 1, 2008, $239,844.32.

This amount continues to accrue interest and/or other fees and penalties.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 27.

156.    To date, DKMC has refused to repurchase the Wright loan.

ANSWER:    Defendants admit the allegations in paragraph 156.

157.    DKMC's failure to repurchase the Wright loan from Wells Fargo Bank also

constitutes a material breach of its contractual obligations to Wells Fargo Bank under §305 of the

Home Equity Seller Guide and Home Equity Agreement.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 157.

## COUNT XVIII–SPECIFIC PERFORMANCE–GUARANTY–DKH
### (Wright Loan - Guaranty)

158.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 and 147

through 157 as though fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1
to 24 and 147 through 157 above as their answer to paragraph 158.

159.    Under the terms of the Home Equity Guaranty, DKH agreed to guarantee the

performance and payment obligations owed by DKMC to Wells Fargo Bank pursuant to the

Home Equity Agreement.

ANSWER:    Defendants admit the allegations in paragraph 159.

160.    DKMC has breached representations, warranties and covenants made with respect to the Wright loan. Pursuant to the Home Equity Agreement and the Home Equity Seller Guide, DKMC is therefore required to repurchase the Wright loan from Wells Fargo Bank at a Purchase Price of at least $239,844.32. Wells Fargo Bank has demanded that DKMC repurchase the Wdght loan, which DKMC has failed to do.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 160.

161.    Pursuant to the Home Equity Guaranty, DKH is required to perform all obligations owed to Wells Fargo Bank by DKMC for the Wright loan. DKH is therefore required to repurchase the Wright loan from Wells Fargo Bank.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 161.

162.    Wells Fargo Bank has demanded that DKH repurchase the Wright loan, and DKH has refused to do so.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 162.

## COUNT XIX–SPECIFIC PERFORMANCE–DKMC
### (Ogden Loan - Repurchase)

163.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 as though fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1 to 24 above as their answer to paragraph 163.

164.    Wells Fargo Bank purchased the Ogden loan from DKMC (loan number 6542310175).

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 164.

165.    DKMC made material misrepresentations with regard to the sale of the Ogden
loan.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 165.

166.    The loan application contains misrepresentations of the borrower's income.  The
borrower filed a Chapter 7 Bankruptcy Petition on or about October 30, 2007. Using the verified
2005 income amount of $3,722 per month, as set forth in the borrower's bankruptcy filings,
results in a debt-to-income ration of 100.34%, a material credit policy violation.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 166.

167.    DKMC failed to provide a qualifying loan and/or sufficient loan documentation as
required by the Home Equity Agreement and Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 167.

168.    The foregoing constitutes a breach of the warranties, representations and
covenants made by DKMC to Wells Fargo Bank under § 300.02 of the Home Equity Seller
Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 168.

169.    As a result of DKMC's foregoing breaches, the Home Equity Agreement and
Home Equity Seller Guide entitle Wells Fargo Bank to require DKMC to repurchase the loan at
the Purchase Price.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 169.

170.    On or about March 14, 2008, Wells Fargo Bank informed DKMC and DKH of the

misrepresentations involving the Ogden loan and demanded that DKMC and DKH repurchase

said loan.  (A copy of correspondence from Wells Fargo Bank to DKMC and DKH is attached

hereto as Exhibit H).

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 170.

171.    The Purchase Price of the Ogden loan is, as of March 14, 2008, $31,700.84. This

amount continues to accrue interest and/or other fees and penalties.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 171.

172.    To date, DKMC has refused to repurchase the Ogden loan.

ANSWER:    Defendants admit the allegations in paragraph 172.

173.    DKMC's failure to repurchase the Ogden loan from Wells Fargo Bank also

constitutes a material breach of its contractual obligations to Wells Fargo Bank under §305 of the

Home Equity Seller Guide and Home Equity Agreement.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 173.

## COUNT XX - SPECIFIC PERFORMANCE -- GUARANTY -- DKH
### (Ogden Loan - Guaranty)

174.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 and 163

through 173 as though fully set forth herein.

36

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1
to 24 and 163 through 173 above as their answer to paragraph 174.

175.    Under the terms of the Home Equity Guaranty, DKH agreed to guarantee the

performance and payment obligations owed by DKMC to Wells Fargo Bank pursuant to the

Home Equity Agreement.

ANSWER:    Defendants admit the allegations in paragraph 175.

176.    DKMC has breached representations, warranties and covenants made with respect

to the Ogden loan.  Pursuant to the Home Equity Agreement and the Home Equity Seller Guide,

DKMC is therefore required to repurchase the Ogden loan from Wells Fargo Bank at a Purchase

Price of at least $31,700.84.  Wells Fargo Bank has demanded that DKMC repurchase the Ogden

loan, which DKMC has failed to do.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 176.

177.    Pursuant to the Home Equity Guaranty, DKH is required to perform all

obligations owed to Wells Fargo Bank by DKMC for the Ogden loan. DKH is therefore required

to repurchase the Ogden loan from Wells Fargo Bank.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 177.

178.    Wells Fargo Bank has demanded that DKH repurchase the Ogden loan, and DKH

has refused to do so.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 178.

37

## COUNT XXI–SPECIFIC PERFORMANCE–DKMC
### (Mazloum Loan - Make Whole Demand)

179.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 as though fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1 to 24 above as their answer to paragraph 179.

180.    Wells Fargo Bank purchased the Mazloum loan from DKMC (loan number 6542309094).

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 180.

181.    DKMC made material misrepresentations with regard to the sale of the Mazloum loan.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 181.

182.    There were undisclosed properties and credit policy violations related to the Mazloum loan.  Specifically, the borrower purchased a different property one week prior to the application date for the Mazloum loan. There are two mortgages secured to the property that secures the Mazloum loan, resulting in a monthly payment in excess of $1,500 and a debt-to-income ration, including the undisclosed mortgages, of 68.37%, which is a credit policy violation of the requirements of the Home Equity Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 182.

183.    DKMC failed to provide a qualifying loan and/or sufficient loan documentation as required by the Home Equity Agreement and Home Equity Seller Guide.

38

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 183.

184.    The foregoing constitutes a breach of the warranties, representations and

covenants made by DKMC to Wells Fargo Bank under § 300.02 of the Home Equity Seller

Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 184.

185.    As a result of DKMC's foregoing breaches, the Home Equity Agreement and

Home Equity Seller Guide entitle Wells Fargo Bank to require DKMC to make whole Wells

Fargo Bank as a result of the undisclosed properties and credit policy violations.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 185.

186.    On or about March 14, 2008, Wells Fargo Bank informed DKMC and DKH of the

misrepresentations involving the Mazloum loan and demanded that DKMC and DKH make

whole Wells Fargo Bank with respect to said loan.  (A copy of correspondence from Wells Fargo

Bank to DKMC and DKH is attached hereto as Exhibit I).

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 186.

187.    The Make Whole amount for the Mazloum loan is, as of March 14, 2008,

$28,173.23.  This amount continues to accrue interest and/or other fees and penalties.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 187.

188.    To date, DKMC has refused to make whole Wells Fargo Bank for the Mazloum

loan.

39

ANSWER:    Defendants admit the allegations in paragraph 188.

189.    DKMC's failure to make whole Wells Fargo Bank for the Mazloum loan also

constitutes a material breach of its contractual obligations to Wells Fargo Bank under §305 of the

Home Equity Seller Guide and Home Equity Agreement.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 198.

## COUNT XXII–SPECIFIC PERFORMANCE–GUARANTY–DKH
### (Mazloum Loan - Guaranty)

190.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 and 179

through 189 as though fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1
to 24 and 179 through 189 above as their answer to paragraph 190.

191.    Under the terms of the Home Equity Guaranty, DKH agreed to guarantee the

performance and payment obligations owed by DKMC to Wells Fargo Bank pursuant to the

Home Equity Agreement.

ANSWER:    Defendants admit the allegations in paragraph 191.

192.    DKMC has breached representations, warranties and covenants made with respect

to the Mazloum loan.  Pursuant to the Home Equity Agreement and the Home Equity Seller

Guide, DKMC is therefore required to make whole Wells Fargo Bank for the Mazloum loan in

an amount of at least $28,173.23.  Wells Fargo Bank has demanded that DKMC make it whole

for the Mazloum loan, which DKMC has failed to do.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 192.

193.    Pursuant to the Home Equity Guaranty, DKH is required to perform all obligations owed to Wells Fargo Bank by DKMC for the Mazloum loan.  DKH is therefore required to make whole Wells Fargo Bank for the Mazloum loan.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 193.

194.    Wells Fargo Bank has demanded that DKH make it whole for the Mazloum loan, and DKH has refused to do so.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 194.

## COUNT XXIII–BREACH OF CONTRACT LOAN AGREEMENT–DKMC
### (Bolger, Juneau and Butler loans)

195.    Wells Fargo realleges and incorporates Paragraphs 1 through 71 as though fully set forth herein.

ANSWER:    Defendants incorporate their answers to paragraphs 1 through 71 above as their answer to the allegations in paragraph 195.

196.    Count XXIII is plead in the alternative to Counts I, III and V.

ANSWER:    Defendants admit the allegations in paragraph 196.

197.    DKMC made material misrepresentations with regard to the sale of the Bolger, Juneau and Butler loans.  DKMC failed to provide a qualifying loan and/or sufficient loan documentation as required by the Loan Agreement and Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 197.

198.    Wells Fargo has demanded that DKMC repurchase the Bolger, Juneau and Butler loans, which DKMC has failed to do.

41

ANSWER:    Defendants admit the allegations in paragraph 198.

199.    The foregoing acts and omissions constitute a breach of the Loan Agreement and under §300.02 of the Seller Guide.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 199.

200.    Wells Fargo has suffered damages as a result of DKMC's breach of the Loan Agreement in an amount of at least $427,170.62, plus the value of the Butler loan in an amount to be determined at trial.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 200.

### COUNT XIV–BREACH OF CONTRACT–GUARANTY–DMK, INC.
### (Bolger, Juneau and Butler loans)

201.    Wells Fargo realleges and incorporates Paragraphs 1 through 71 and 195 through 200 as though fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1
to 71 and 195 through 200 above as their answer to paragraph 201.

202.    Count XXIV is plead in the alternative to Counts II, IV and VI.

ANSWER:    Defendants admit the allegations in paragraph 202.

203.    Under the terms of the Guaranty, DK, Inc. agreed to guarantee the payment of amounts due to Wells Fargo pursuant to the Loan Agreement.

ANSWER:    Defendants admit the allegations in paragraph 203.

204.    Pursuant to the Loan Agreement, DKMC owes Wells Fargo breach of contract damages of at least $427,170.62, plus value of the Butler loan in an amount to be determined at

trial. Wells Fargo has demanded payment from DKMC, which DKMC has failed to make.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 204.

205.    Pursuant to the Guaranty, DK, Inc. owes Wells Fargo all amounts due and owing

from DKMC for the Bolger, Juneau and Butler loans.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 205.

206.    Wells Fargo has demanded payment of such sums from DK, Inc., which DK, Inc.

has failed to make.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 206.


**COUNT XXV–BREACH OF CONTRACT–HOME EQUITY AGREEMENT–DKMC**
**(Antink, Chapman, Betacour, Parker, Myrlie, Wright, Odgen and Mazloum loans)**

207.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24 and 72

through 194 as though fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1
to 24 and 72 through 193 above as their answer to paragraph 207.

208.    Count XXV is plead in the alternative to Counts VII, IX, XI, XIII, XV, XVII, XIX

and XXI.

ANSWER:    Defendants admit the allegations in paragraph 208.

209.    DKMC made material misrepresentations with regard to the sale of the Antink,

Chapman, Betacour, Parker, Myrlie, Wright, Ogden and Mazloum loans.  DKMC failed to

provide qualifying loans and/or sufficient loan documentation as required by the Home Equity

Agreement and Home Equity Seller Guide.

ANSWER:      Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 209.

210.    Wells Fargo Bank has demanded that DKMC repurchase the Antink, Chapman,

Betacour, Parker, Myrlie, Wright and Ogden loans and that DKMC make whole Wells Fargo

Bank for the Mazloum loan, which DKMC has failed to do.

ANSWER:      Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 210.

211.    The foregoing acts and omissions constitute a breach of the Home Equity

Agreement under § 300.02 of the Home Equity Seller Guide.

ANSWER:      Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 211.

212.    Wells Fargo Bank has suffered damages as a result of DKMC's breach of the

Home Equity Agreement in an amount of at least $811,477.38.

ANSWER:      Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 212.


**COUNT XXVI–BREACH OF CONTRACT–HOME EQUITY GUARANTY–MDKH**
**(Antink, Chapman, Betacour, Parker, Myrlie, Wright, Ogden and Mazloum loans)**

213.    Wells Fargo Bank realleges and incorporates Paragraphs 1 through 24, 72 through

194 and 207 through 212 as though fully set forth herein.

ANSWER:      Defendants incorporate their answers to paragraphs 1 through 24 and 72
through 212 above as their answer to paragraph 213.

214.    Count XXVI is plead in the alternative to Counts VIII, X, XII, XIV, XVI, XVIII,

XX and XII.

ANSWER:      Defendants admit the allegations in paragraph 214.

215.    Under the terms of the Home Equity Guaranty, DKH agreed to guarantee the payment of amounts due to Wells Fargo Bank pursuant to the Home Equity Agreement.

ANSWER:    Defendants admit the allegations in paragraph 215.

216.    Pursuant to the Home Equity Agreement, DKMC owes Wells Fargo Bank breach of contract damages of at least $811,477.38.  Wells Fargo Bank has demanded payment from DKMC, which DKMC has failed to make.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 216.

217.    Pursuant to the Home Equity Guaranty, DKH owes Wells Fargo Bank all amounts due and owing from DKMC for the Antink, Chapman, Betacour, Parker, Myrlie, Wright, Ogden and Mazloum loans.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 217.

218.    Wells Fargo Bank has demanded payment of such sums from DKH, which DKH has failed to make.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 218.

**COUNT XXVII–CONTRACTUAL ATTORNEYS' FEES–DKMC, DK, INC. and DKH
(Loan Agreement, Guaranty, Home Equity Agreement and Home Equity Guaranty)**

219.    Wells Fargo and Wells Fargo Bank reallege and incorporate Paragraphs 1 through 218 as though fully set forth herein.

ANSWER:    Defendants incorporate by reference their answers to paragraphs 1
to 1 and 218 above as their answer to paragraph 219.

45

220.    Pursuant to the terms of the Sellers Guide and Home Equity Sellers Guide, DKMC agreed to indemnify Wells Fargo and Wells Fargo Bank for all costs, including attorneys' fees, incurred by Wells Fargo and Wells Fargo Bank in the enforcement of the terms of the Loan Agreement, Sellers Guide, Home Equity Agreement and Home Equity Sellers Guide.

ANSWER:    Defendants admit the allegations in paragraph 220.

221.    Wells Fargo and Wells Fargo Bank sent a demand letter to DKMC, DK, Inc. and DKH seeking repurchase of the loans at issue in this complaint and have made other efforts to collect amounts due from DKMC, DK, Inc. and DKH.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 221.

222.    Despite these collection efforts undertaken by Wells Fargo and Wells Fargo Bank, DKMC, DK, Inc. and DKH have failed to repurchase the loans and/or make whole Wells Fargo Bank for the loans.

ANSWER:    Defendants admit the allegations in paragraph 222.

223.    As a result of DKMC's failure to repurchase the Bolger, Juneau, Butler Antink, Chapman, Betacour, Parker, Myrlie, Wdght, and Ogden loans and failure to make whole Wells Fargo Bank for the Mazloum loan, Wells Fargo and Wells Fargo Bank, were forced to incur costs and attorneys' fees to enforce their rights under the Loan Agreement and Home Equity Agreement.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 223.

224.    Pursuant to the terms of the Guaranty, DK, Inc. agreed to indemnify Wells Fargo for all costs, including attorneys' fees, incurred by Wells Fargo in the enforcement of the

46

Guaranty.

ANSWER:    Defendants admit the allegations in paragraph 224.

225.    As a result of DK, Inc.'s breach of the Guaranty and failure to repurchase the

Bolger, Juneau and Butler loans, Wells Fargo was forced to incur costs and attorneys' fees to

enforce its rights under the Guaranty.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 225.

226.    Pursuant to the terms of the Home Equity Guaranty, DKH agreed to indemnify

Wells Fargo Bank for all costs, including attorneys' fees, incurred by Wells Fargo Bank in the

enforcement of the Home Equity Guaranty.

ANSWER:    Defendants admit the allegations in paragraph 226.

227.    As a result of DKH's breach of the Home Equity Guaranty and failure to

repurchase the Antink, Chapman, Betacour, Parker, Myrlie, Wright, and Ogden loans and DKH's

failure to make whole Wells Fargo Bank for the Mazloum loan, Wells Fargo Bank was forced to

incur costs and attorneys' fees to enforce its rights under the Home Equity Guaranty.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 227.

228.    Wells Fargo and Wells Fargo Bank are therefore entitled to recover attorneys' fees

and related costs incurred by them in bringing this lawsuit to enforce their rights under the Loan

Agreement, Guaranty, Home Equity Agreement and Home Equity Guaranty.

ANSWER:    Defendants lack knowledge or information sufficient to form a
belief as to the truth of the allegations in paragraph 228.

## AFFIRMATIVE DEFENSES

1.      Plaintiffs are collaterally estopped from damages recovery for any of the loans

where the a Plaintiff "credit bid" its judgment in a foreclosure proceedings pursuant to *Freedom*

*Mortgage Corp. v. Burnham Mortgage, Inc*., 2006 WL 695467 (N.D. Ill.).

2.      Plaintiffs failed to mitigate damages by failing to institute foreclosure proceedings

to collect the several of the mortgage loans at issue.

3.      Where any loan at issue was foreclosed, Plaintiffs are not entitled to specific

performance because the note and mortgage have been extinguished and merged into a judgment

of foreclosure.

WHEREFORE, Defendants Draper and Kramer Mortgage Corp., Draper and Kramer,

Incorporated and DKH, Inc., respectfully requests that this court enter judgment in its favor and

against Plaintiff and award Defendants their costs.


Respectfully submitted,
Draper and Kramer Mortgage Corp., Draper and Kramer,
Incorporated and DKH, Inc.


By: _____/s/ John J. Lydon_____
            One of its attorneys.

John J. Lydon, Esq.
Gomberg, Sharfman, Gold & Ostler, P.C.
208 South LaSalle St., Suite 1200
Chicago, Illinois 60604
(312) 332-6194
fax (312) 332-4083

## CERTIFICATE OF SERVICE

I, John J. Lydon, certify that, service of this document was accomplished by means of the Court's "ECF" system on May 22, 2008.

/s/ John J. Lydon